UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

Criminal No.
03-10354-PBST

UNITED STATES OF AMERICA

VS.

MICHAEL VINAL

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT MICHAEL VINAL'S MOTIONS TO STRIKE SURPLUSAGE FROM THE SUPERCEDING INDICTMENT AND MOTION IN LIMINE

This motion presents squarely consideration of the impact of the Supreme Court's decision in Blakely v. Washington, 124 S.Ct. 2531 (2004) ("Blakely"), and specifically, the procedures to use in the post-Blakely landscape. For the reasons set forth below, the government's attempt at an interim "fix it" is neither lawful nor sound and should be rejected by this Court.

## Statement of the Case

On November 20, 2003, a grand jury returned a sealed indictment against Michael Vinal alleging in one count that the defendant did violate Title 18 U.S.C. §1512(b)(3). The grand jurors allege that Michael Vinal worked at a company identified as ABC Company. ABC Company and various of its employees were targets of a federal investigation focusing on fraudulent billing in connection with federal highway projects where the federal government was billed for loads of asphalt that were actually not delivered or were inflated. The indictment further alleges that in various times material to the indictment the defendant worked on a crew at ABC Company that was supervised by an individual identified as RF who was also a target of the federal investigation. The government alleged that in March of 2003 a cooperating witness recorded a telephone conversation with RF during which RF made some incriminating statements. Shortly thereafter, on March 27, 2003 law enforcement officers executed a search warrant at the ABC Company making many ABC Company employees aware of this on-going law enforcement investigation.

On April 9, 2003 the company was served with a grand jury subpoena. Two months later, in early June of 2003 an attorney representing RF[1] was informed by the government that his client's conversation with a cooperating witness had been recorded. The attorney was given some detail of the substance of the conversation although the identity of the cooperation witness was not specifically disclosed. Further, the attorney was told that his client was the subject of a grand jury investigation and his client would likely become a target of this investigation.

During the same period of time RF's brother was served with a grand jury subpoena. On June 18, 2003 the attorney representing RF informed the government that he was representing the brother as well as RF. The government alleges that during the evening of June 18, 2003, Michael Vinal called the cooperating witness and left a threatening message on his work answering machine as a result of which the government alleges that the defendant, Michael Vinal, did "knowingly intimidate, threaten, attempt to intimidate and attempt to threaten a cooperating witness by placing a threatening telephone call with the intent to hinder, delay or prevent communication to a law enforcement officer of information relating to the commission or possible commission of a federal offense, namely false statements in connection with construction of any highway or related project in violation of Title 18 U.S.C. §1020.[2]

The defendant entered a plea of not guilty to this indictment and the matter was scheduled for pretrial hearings before Hon. Magistrate Collings and the case was placed on the docket of Hon. Patti Saris. Subsequently, on August 26, 2004 a superceding indictment was brought wherein the government alleged in its framed indictment all of the facts as set forth in the initial indictment and added **"NOTICE OF ADDITIONAL FACTOR"** The grand jury further charges:

11.) Vinal's witness tampering involved causing or threatening to cause physical injury to a person or property damage as described in USSG §2J1.2."

This superceding indictment therefore contains "grand jury findings" that include essentially sentencing enhancements contained in the United States Sentencing

---

[1] The government has since disclosed that this individual is alleged to be Attorney Peter F. Parker of Boston, Massachusetts.

[2] The government alleges that the threat consists of a message that the defendant left on the answering machine of the cooperating witness which statement was recorded by the alleged victim's answering machine where the defendant is alleged to have stated that he called the cooperating witness an insulting

Guidelines. The defendant alleges that the inclusion of the grand jury findings in the superceding indictment amounts to surplusage subject to being stricken upon motion of the defendant as being in violation of Rule 7(d) in the Federal Rules of Criminal Procedure. The defendant further suggests that the inclusion of the "grand jury findings" is without a doubt inflammatory and prejudicial to the defendant and should be stricken.

WHEREFORE the defendant moves;

1.) That all hearsay statements set forth in the indictment be stricken and/or not presented to or read to the trial jury. The defendant moves that this Court compel the government to make an offer of proof indicating its fair expectation that it will have the ability to prove these hearsay statements pertaining to alleged conversations between government counsel and defense counsel as well as the quantum leap to draw the inference that this information was conveyed in any fashion to the defendant.

2.) The defendant moves that this Court strike the surplusage from the superceding indictment.

**<u>Argument</u>**

In response to the <u>Blakely</u> decision, on August 26, 2004, the government caused a grand jury to issue a superceding indictment. Although this indictment does not in effect change the government's theory of liability of significance is the addition of the section entitled "Notice of Additional Factor" where it is alleged "the grand jury further charges." It is in this portion of the indictment that the government alleges the sentencing factors that the threat allegedly conveyed also involved "causing or threatening to cause physical injury to a person or property damage."

---

name, stated he had guys "on his back" and stated that he "sucks," he knew what he was doing and that he would "pay." A copy of the transcript will be introduced at the time of the hearing on this motion.

As the Court is aware, the United States Sentencing Guidelines provide a complex system for setting a sentence for each convicted defendant based upon numerous factors. Starting with a prescribed base offense level for the offense of conviction, an adjusted offense level is then arrived at through the addition of various sentencing enhancements and the subtraction of various downward adjustments, where facts in support of each were found. As enacted, the determination of the applicability of each of the adjustments, upward and downward, is to be made unfettered by the rules of evidence and by the sentencing judge, not the jury; and on the basis of a preponderance of evidence, not beyond a reasonable doubt.

In Blakely, decided June 24, 2004, the Supreme Court held that Washington's sentencing scheme, similar to the federal sentencing scheme, was unconstitutional under the Sixth Amendment because it authorized sentences above the legally prescribed maximum sentence based on factors found by a judge rather that their either having been admitted by the defendant or found by a jury. The dissent in Blakely anticipated that the decision would have an immediate impact on the federal sentencing guidelines, 124 S.Ct. 2543 (O'Connor, J.), and it has.[3] Though, by its own terms, Blakely does not apply to the federal guidelines, virtually every court that has analyzed the question has held that the federal guidelines cannot stand in light of the reasoning of Blakely. *See, e.g.,* United States v. Marrero, 2004 WL 1621410 at *2 (S.D.N.Y. July 21, 2004) (Rakoff, D.J.), rejecting the government's claim that Blakely does not apply to federal sentencing guidelines, and noting that "virtually every court has compared the two systems has concluded that the federal Guidelines are, if anything 'more vulnerable to constitutional attack than the Washington guidelines the Supreme Court invalidated in Blakely'" (citations and brackets omitted); United States v. Einstman, 2004 WL 1576622 at *2-5 (S.D.N.Y. July 14, 2004) (McMahon, D.J.), rejecting the government's argument that Blakely does not apply to the federal sentencing guidelines: "I cannot improve on Judge Posner's articulation [in United States v. Booker, 2004 WL 1535858 (7th Cir. July 9, 2004)] of the fallacy in the government's insistence that lower courts must pretend that Blakely never happened . . .); United States v. Mueffleman, 2004 WL 1672320 at *8 (D. Mass. July 26, 2004), joining the "legions of courts that have ruled that Blakely applies to the Sentencing Guidelines" and n.25, listing cases; and United

---

[3] Judge O'Connor has been widely quoted as having remarked that Blakely "looks like a number 10 earthquake to me". Jeff Chorney, "O'Connor to Judges: Explain Yourselves", The Recorder, July 23, 2004, *quoted* in United States v. Mueffleman, 2004 WL 1672320 at n.12 (D. Mass. July 26, 2004).

States v. Terrell, 2004 WL 1661018 at *2-3 (D. Neb. July 22, 2004): "the court comes to the unmistakable conclusion that the constitutional precepts outlined in Blakely are equally applicable to the United States Sentencing Guidelines. For purposes of the Blakely analysis, no meaningful difference exists between the sentencing regime employed by the State of Washington and the federal sentencing guidelines at issue here." (Citations omitted.)

That the sentencing guidelines are not "business as usual" is underscored by the fact that the Second Circuit has certified to the Supreme Court questions concerning the applicability of Blakely to the guidelines. United States v. Penaranda, 2004 WL 1551369 (2d Cir. July 12, 2004). Presumably the question of the viability of the guidelines will be resolved shortly: On August 2, 2004, the Supreme Court granted *certiorari* in two cases raising the issue – United States v. Booker, No. 04-104, and United States v. Fanfan, No. 04-105 – for review in the October 2004 term. 542 U.S __ (August 2, 2004). These cases have been briefed, argued and awaiting decision.

If this Court is of the view, nevertheless, that the sentencing guidelines are still good law, unless and until either the First Circuit or the Supreme Court holds otherwise, then these Supplemental Allegations should certainly be stricken. That is so, clearly, because were there a conviction, it would be the Court and not the jury who would determine whether such a threat of bodily injury or property damage was conveyed. If it is assumed for purposes of this motion that the Court anticipated that Blakely applies and the guidelines will be struck down, the surplusage should be stricken before trial.

The insertion of the Supplemental Allegations is an attempted end-run around Blakely. It assumes that the guidelines will remain intact and fully controlling of any sentencing to be calculated, but simply inserts the jury as the determiner of the upward adjustments the government will seek to impose. It evidently leaves to the court, not the jury, determination of all other factors, including all potential downward adjustments.

It is respectfully submitted that this procedure is neither legally permissible nor in any way sensible. First, the procedure anticipated by the insertion of the Additional Factors depends upon a determination by this Court that the guidelines are severable, that is, that the "bad" parts of the guidelines can be severed but the system otherwise remains intact. For the reasons set forth below, **and urged by the government repeatedly in prior cases** the guidelines are **not** severable. Second, quite apart from whether

the guidelines can survive a severability analysis, the procedure the government is asking the Court to engage in here is an impermissible exercise of court power.  Finally, the procedure suggested is utterly unworkable and impractical.

Indeed though a circuit court of appeals has opined that such a procedure could be initiated,[4] and a district court traced the history of jury participating in sentencing,[5] no reported decision has been located where a district judge actually submitted sentencing questions to a jury.

### THE GUIDELINES ARE NOT SEVERABLE AND THEIR FAILURE UNDER BLAKELY PRECLUDES THE EFFORT TO SAVE THEM HERE.

1.  The Guidelines Cannot Meet the Severability Test

Fed.R.Crim.P. Rule 7(d) permits a court to strike from an indictment any "surplusage", intended to protect a defendant from "immaterial and irrelevant allegations".  Notes to Rule 7 (d).  It is submitted that the Additional Factors contained in the superceding indictment is surplusage and should be stricken.

Assuming that the Court determines Blakely invalidates some portion of the guidelines, the Court must consider the impact of that finding on the remaining portions of the guidelines.  In doing so, courts are instructed to "refrain from invalidating more of the statute than is necessary".  Instead, it is the duty of courts "to maintain [an] act in so far as it is valid", Regan v. Time, 468 U.S. 641, 652 (1984), ". . .unless it is evident that the Legislature would not have enacted those provisions that are within its power, independently of that which is not." Alaska Airlines, Inc. v. Brock, 480 U.S. 678, 684 (1987).  In order to determine whether some part of a statute can survive a determination that another portion is invalid, a court must determine whether, absent the excised portion, "the statute created in its absence is legislation that Congress would not have enacted". *Id.*

---

[4] United States v. Ameline, 2004 WL 1635808 at *11 (9th Cir. July 21, 2004) (guidelines severable since juries making the fact determinations for sentencing purposes does not frustrate intent of congress in enacting the guidelines).  *See also* United States v. Zompa, 2004 WL 1663821 at *2 (D. Me. July 26, 2004) (feeling constrained to agree with Ameline on severability but not addressing the issue of using a jury for fact finding).
[5] In United States v. Klum, 2004 WL 1616460 at *15 (E.D.N.Y. July 20, 2004), notwithstanding Judge Weinstein's scholarly review and advocacy in favor of jury participation, he declined to submit anything to an "advisory" jury in the case.

In <u>United States v. Mueffleman</u>, *supra*, Judge Gertner engaged in a careful analysis of the severability of the guidelines to determine whether some aspect of the provisions survives. She concluded it does not, for several reasons. First, in enacting the sentencing reform legislation that became the guidelines, Congress specifically considered – and **rejected** – assigning a fact finding role to juries. Second, she concludes that the guidelines system is a careful balance of Congress, the Sentencing Commission and the courts. The provisions of the guidelines were drafted with judges, not juries, in mind. She determined that it is completely unworkable to fashion interrogatories and instructions to address the subtle and complex questions that application of the guidelines requires. For Judge Gertner, "the core question remains: Is such a system at all like the sentencing regime that Congress would have enacted: The answer to that question has to be 'no'". 2004 WL 1672320 at *9. As such, severability would frustrate congressional will, and finds the guidelines not severable.

Of course, the best argument to be made against severability of the sentencing guideline scheme is the one promoted by the Department of Justice itself. In a "model brief" distributed to all United States Attorneys' offices to be submitted in support of the government's position with respect to these issues, the government makes two arguments. Its first is that the sentencing guidelines are still good law and <u>Blakely</u> is neither legally binding nor persuasive in striking down the federal system. As noted above, that argument has been rejected by the vast majority of courts that have considered it, including in the two reported decisions in this district.

The second argument is that if portions of the sentencing guidelines fail under the Sixth Amendment, then the entire scheme must fail. That is, the guidelines are **not** severable because the resulting scheme would not realize, but would frustrate, congressional intent.[6] And, in contrast to its argument in favor of continued vitality of the entire scheme, which has been consistently rejected, the vast majority of those courts that have considered this question have indeed followed the government's view. Each has found that courts **cannot** fashion remedies that will allow the guidelines to stay afloat.

---

[6] For example, the government argues that "the scheme that would result from trying to superimpose the jury system on enhancements (but not reductions) under the Guidelines would put in place a scheme that is so different from what Congress enacted (and the Sentencing Commission thought it was promulgating) that it would in essence be [sic] judicial lawmaking, not effectuation of congressional intent." Exhibit "B" at 29.

In <u>Einstman</u>, for example, Judge McMahon found the unconstitutional portions could not be severed from the guidelines. In so holding, she stated:

> I agree wholeheartedly with the Government's position that the USSG are not severable, so the unconstitutionality of the provisions concerning the judicial fact-finding of sentencing enhancements necessarily means that the entire USSG scheme falls. The Government's analysis of this point, under Minnesota v. Mille Lacs Band of Chippewa Indians, 526 U.S. 172,191 (1999), seems beyond cavil. Recent Congressional actions in connection with the USSG underscore that ". . . the Legislature would not have enacted those provisions are within its power, independent of those which is not." Champlin Refining Co. v. Corporation Comm'n, 286 U.S. 210 (1932), had Congress known that it was unconstitutional for judges to make the explicit factual findings that play, in highly regimented and specific ways, into a "narrow band" of highly constraining, if not totally non-discretionary, sentencing options.

2004 WL 1576622 at \*6.  Judge Rakoff's analysis in Marrero also adopts the government's anti-severability stance:

> The Court does agree, however, with the Government's "fallback" position . . . that if such sentencing enhancements are unconstitutional, the entire Sentencing Guidelines must be set aside, since the offending sections cannot meaningfully be severed from the whole. The Guidelines, on their face, represent an intricate set of weights and measures, of upward enhancements and downward adjustments, that were intended to balance, however imperfectly, a host of competing sentencing considerations.

2004 WL 1621410 at \*3. *And see* <u>United States v. Lamoreaux</u>, 2004 WL 1557283 (W.D. Mo. July 7, 2004)(the Guidelines were designed as an integrated regime, and therefore cannot be severed into constitutional and unconstitutional parts while still remaining true to the legislative purpose).

Therefore it is submitted that the guidelines are not severable and, as such, the procedure proposed by the government intended to provide a factual basis for applying the guidelines in the event of a conviction here, should not be permitted.

2. **<u>No Authority to Fashion a Remedy</u>.**

Perhaps the theoretical question of whether a severability analysis could somehow be fashioned that would allow some portion of the guidelines to be saved need not in fact be answered, since we submit that such would be to no practical effect. That is so because the court has no authority to fashion a remedy here. Fed.R.Crim.P. Rule 32(i)(3) specifically reserves to the judge, not the jury, the duty of making sentencing findings. USSG §6A1.3(b), assigns the role of fact finder to judge, not jury, and that provision is made mandatory by 18 USC §3553(b). Thus, the proposed submission of these issues to the jury is in direct contradiction to the law.

In <u>United States v. Jackson</u>, 390 U.S. 570, 578-81 (1968), the Supreme Court held that, where a particular federal sentencing statute is unconstitutional, a federal judge has no authority to devise his own procedure, unauthorized by statute or rule, simply because the procedure devised, if properly enacted by Congress, would itself pass constitutional muster. In <u>Jackson</u>, the Court considered the federal kidnapping statute; it contained a mandatory death penalty where a trial jury recommended it, thereby making that penalty possible only for those defendants who exercised their right to trial by jury. After agreeing with the lower courts that the procedure was unconstitutional, the Court considered the government's claim that the trial court in every case could convene a special penalty phase jury. The Court rejected the notion, declining to read into a silent statue Congressional authority to develop a procedure for effectuating Congress's intent.

Applying that same reasoning here, the fact that Congress *could* authorize the submission of sentencing factors to juries does not, without that legislation, allow this Court to do it on its own. That is particularly true where doing so directly contradicts current law, as submission to the jury of these issues would be here.

3. **<u>The Remedy is Neither Practical nor Workable.</u>**

Finally, on a practical level, the proposed procedure creates a mind boggling array of problems. Why is the jury considering only the upward departures? Perhaps the jury should consider the downward departures, as well.

It is therefore respectfully submitted that there is no precedent for subjecting a criminal jury to these complex questions, and we object to it being done here with no legal authority to do so.

**Conclusion**

For all these reasons, the defendant moves this Court for an order striking as surplusage the "Additional Factor" in the superceding indictment and preclude the government from offering at trial any proof the allegations made therein.

                                      Michael Vinal
                                      By his attorney,

                                      /s/ Kevin J. Reddington, Esquire