UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHSUETTS

NO. 03-CR-10354-PBS

UNITED STATES

v.

MICHAEL VINAL,
Defendant

## MEMORANDUM OF LAW IN SUPPORT OF MOTION OF E. PETER PARKER, ESQ. AND ROBERT FOLEY TO QUASH SUBPOENA CALLING FOR MR. PARKER'S TESTIMONY AT TRIAL

Attorney E. Peter Parker and his client, Robert Foley, have moved to quash the subpoena served on Mr. Parker by the government, seeking to compel Parker's testimony at the upcoming trial of Michael Vinal.

**Statement of Relevant Facts**

According to the Superseding Indictment ("SI") in this case, the government has been investigating ABC Company (a pseudonym), an aggregate supplier and general contractor. The government's investigation focuses on whether the company and some of its employees defrauded the federal government in connection with federal highway projects by (1) billing for loads of asphalt that were not actually delivered, or (2) billing for amounts of asphalt that exceeded the amount of asphalt actually delivered. (SI ¶ 2).

The defendant, Michael Vinal, is alleged to be an employee of ABC Company, working on a "crew" that was supervised by someone identified as "R.F." On

1

information and belief, the R.F. referred to in the Superseding Indictment is the movant Robert Foley. Robert Foley is a target of the investigation. (SI ¶ 3). According to the Superseding Indictment, a cooperating witness recorded a telephone conversation with Foley in March 2003, during which Foley made some incriminating statements. (SI ¶ 4).

On March 27, 2003, law enforcement officers executed a search warrant at ABC Company, thereby making many employees aware of the investigation. A grand jury subpoena was served on the company on April 9, 2003. (SL ¶ 5).

In late April 2003, Parker contacted the Assistant U.S. Attorney directing the investigation, Allison D. Burroughs, and advised her that he represents Robert Foley. Burroughs described Foley as a subject, and told Parker she would give Foley a "proffer letter" if he would come to the U.S. Attorney's Office and speak with the prosecutor and investigators. Still in late April 2003, Parker told Burroughs that Foley did not want to proffer. (Parker Affidavit ¶¶ ).

In May 2003, Burroughs again raised the idea of Foley giving a proffer. Later in May 2003, Parker told Burroughs that Foley was not interested in cooperating. Burroughs accused Parker of not acting in his client's best interest by refusing to bring Foley in for a proffer. There were other conversations in May and June in which the prosecutor implored Parker to convince Foley to proffer. (Parker Affidavit ¶¶ ).

The Superseding Indictment alleges that in early June 2003, an attorney representing Robert Foley (Parker) was informed that Foley's conversation with the cooperating witness had been recorded. Parker was given some details of the substance of the conversation, although the identity of the cooperating witness was not disclosed. Parker was told that Foley was a subject of the investigation and would likely become a

target. (SI ¶ 6). The Superseding Indictment further alleges that Robert Foley's brother was served with a subpoena "during this same period of time." On June 18, 2003, Parker informed Burroughs that he was representing the brother as well. (SI ¶ 7). Finally, the Superseding Indictment alleges that during the evening of June 18, 2003, the defendant, Michael Vinal, called the cooperating witness and left a "threatening message" on his work answering machine. (SI ¶ 8).

On July 8, 2003, Burroughs sent a "target letter" directly to Foley. A copy was sent to Parker. In the letter, Burroughs continued her effort to persuade Foley to cooperate with the government, writing, "As I have previously mentioned to your attorney, we are willing to consider immunizing you following a truthful proffer." (Parker Affidavit ¶, and Exhibit A thereto).

Parker responded to Burroughs by letter dated July 21, 2003. In the letter, he chastised her for directly contacting his client, in violation of Rule 4.2 of the Massachusetts Rules of Professional Conduct. Parker wrote:

> Putting aside the inappropriateness of your direct communication with a represented person, I do not understand why you felt that it was necessary. You and I have discussed Mr. Foley and your investigation on the telephone on numerous occasions and in person at least once. I have returned all of your telephone calls promptly. Under the circumstances, it is difficult not to view your July 8 direct communication with Mr. Foley – coupled with your ongoing criticism of the way I have seen fit to protect Mr. Foley's rights, which is not to your liking – as a deliberate end-run and an attempt to drive a wedge between Mr. Foley and me.

(Parker Affidavit ¶, and Exhibit B thereto).[1]

On October 15, 2004, the government faxed a subpoena requiring Parker's testimony at the trial of Michael Vinal. In an accompanying letter, the prosecutor

---

[1] Section 9-13-.240 of the United States Attorney's Manual prohibits an attorney for the government from contacting a represented person who is a target of a criminal investigation, except in the circumstances described in section 9-13.241. None of the exceptions listed in that section applies.

3

informed Parker about the nature of his intended direct examination: "We will be asking you questions about a very limited topic: whether you passed along to your client, Mr. Foley, the information AUSA Allison Burroughs conveyed to you about the recorded phone call between Mr. Foley and a cooperating witness; and, if so, when." (Parker Affidavit ¶ and Exhibit C thereto).

The investigation of the activities of ABC Company and its employees is continuing. (Parker Affidavit, ¶ ).

## ARGUMENT

**1. The Motion to Quash Should Be Allowed Because Compliance with the Subpoena Would Impermissibly Interfere with the Attorney-Client Relationship Between Parker and Foley.**

### Summary of Applicable Law

Rule 17(c) provides that a subpoena may be quashed "if compliance would be unreasonable or oppressive." In *United States v. Nixon*, 428 U.S. 683, 400 (1974), this was interpreted to mean that a subpoena seeking documents may be enforced if the proponent establishes relevance, admissibility, and specificity.

While Rule 17(c) is headed by the phrase "Producing Documents and Objects," the caselaw indicates that similar principles govern whether subpoenas compelling the testimony of witnesses should be enforced. The First Circuit has suggested that a subpoena will be enforced if the proponent can show that the testimony is both relevant and material. . ."); *Stern v. United States District Court*, 214 F.3d 4, 17 (1st Cir. 2000). Materiality means that the evidence would be favorable to the proponent. *United States v. Campbell*, 874 F.2d 838, 851 (1st Cir. 1989); *United States v. Valenzuela-Bernal*, 458

4

U.S. 858, 867 (1982)("He must at least make some plausible showing of how their testimony would have been both material and favorable to his defense.").

Besides the general standard, the caselaw also recognizes that subpoenas may be quashed because of concerns about privilege, *In re Grand Jury Subpoena*, 274 F.3d 563, 570 (1st Cir. 2001)(Attorney and clients properly allowed to intervene to assert privilege), or constitutional issues. *In re Grand Jury Matters*, 751 F.2d 13 (1st Cir. 1984).

The court's decision in the *Grand Jury Matters* case is especially instructive here. Federal grand jury subpoenas were served on four attorneys who were representing defendants in New Hampshire state court. The subpoenas called for the disclosure of billing records. In addition, one of the subpoenas required one of the attorneys to produce records about his meetings with his client, and to offer testimony. The district court granted the motion to quash, emphasizing the fact that the defendants faced pending state court charges and were at the same time being investigated by federal authorities. The court observed:

> The use of the phrase chilling effect upon the role of an attorney engaged in criminal defense work by being served a subpoena in circumstances such as this is mild. To permit it would have an arctic effect with the non-salutary purpose of freezing criminal defense attorneys into inanimate ice floes, bereft of the succor of constitutional safeguards.

*In re Grand Jury Matters*, 593 F. Supp. 103, 107 (D. N.H. 1984).

The Court of Appeals affirmed, finding that the district court could properly quash the subpoenas without regard to whether the attorney-client privilege protected some or all of the documents from disclosure. The Court emphasized that the timing of the subpoena jeopardized important rights while the defendants prepared for trial:

> To call defense attorneys before the grand jury, in connection with an investigation of the same activities for which their clients were standing

5

trial in state court, while the attorneys were preparing for this major felony trial, could be taken as a veiled threat, with such potential for harm to the state defendants and defense bar as to require the government to show with particularity why the grand jury's investigation required the execution of the subpoenas at this particularly sensitive moment.

*In re Grand Jury Matters*, 751 F.2d 13, 18.

The court went on to describe some of the factors that could be weighed in deciding whether to quash the subpoena: (1) the potential for a conflict of interest, where the lawyer wants to avoid contempt and the client wants the lawyer to resist to the bitter end; (2) requiring the attorney to become a witness drives a wedge between attorney and client; (3) it may lead to disqualification of counsel; and (4) it gives the U.S. Attorney a means to influence the disqualification of defense counsel.

### Application of Law to Facts

The facts of this case are every bit as egregious as those of the *In re Grand Jury Matters* case. The same result should apply. In this case, the government is obviously frustrated that Robert Foley has declined to enter into a proffer agreement, notwithstanding the persistent efforts of Assistant U.S. Attorney Burroughs to persuade Foley's counsel as to the wisdom of that course of action. When she failed to convince Parker, she violated the Rules of Professional Conduct and the United States Attorney's Manual by writing directly to Mr. Foley, informing him that he is a target and addressing issues about immunity and proffers.

Having failed yet again to cause Foley to jettison Parker and hire someone more to the prosecutor's liking, the government has now embarked on a "fishing expedition" in another attempt to drive a wedge between Parker and Foley. *Cf. Whitehouse v. United States District Court*, 53 F.3d 1349, 1355 n.8 (1st Cir. 1995)(criticizing use of attorney

6

subpoenas by prosecutors who go on fishing expeditions). It is a fishing expedition because there is no reason, at least on this record, for the government to know what, if anything, Parker told Foley about the recorded conversation. It is utter speculation for the government to allege that Parker conveyed the information to Foley. Moreover, there is no evidence that the government can point to that Foley relayed to Vinal anything he might or might not have learned from Parker.

The trial subpoena is a blatant and crude effort to drive a wedge between Parker and Foley because it raises the intimidating prospect of Foley's lawyer being asked to testify about what he told Foley and when. The prospect that one's lawyer might be examined at another person's trial about lawyer-client conversations is surely a daunting one. Here, we have an on-going investigation. Parker's ability to continue representing Foley will be damaged, perhaps beyond repair, if he is required to testify about what information, if any, he conveyed to Foley after his conversation with Burroughs. For all the reasons set forth in *In re Grand Jury Matters*, the Court should grant the motion to quash.

II. **The Motion to Quash Should Be Granted Because the Proposed Examination of Parker Would Inevitably Violate Foley's Attorney-Client Privilege.**

### Summary of Applicable Law

The attorney-client privilege is "the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981); *Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998). The privilege is "absolutely essential to our representational system." *In Re Grand Jury Matter*, 969

F.2d 995, 997 (11th Cir. 1992). The attorney-client privilege is closely linked to a defendant's Sixth Amendment right to assistance of counsel. "Without the attorney-client privilege, [a defendant's constitutional right to the assistance of counsel] and many other rights belonging to those accused of crime would in large part be rendered meaningless." *United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989).

The privilege "protects confidential communications made between clients and their attorneys for the purpose of securing legal advice." *Swidler*, 524 U.S. at 403. The "root purpose" of the attorney-client privilege is "'to encourage full and frank communication between attorneys and their clients and thereby to promote broader public interests in the observance of law and administration of justice.'" *Federal Deposit Ins. Corp. v. Ogden Corp.*, 202 F.3d 454, 461 (1st Cir. 2000), quoting *Upjohn*, 449 U.S. at 389. *See also United States v. Suarez*, 820 F.2d 1158, 1160 (11th Cir. 1987) (purpose is to "promote freedom of consultation between client and lawyer by eliminating fear of subsequent compelled legal disclosure of confidential communications"). The attorney-client privilege "exists to protect not only the giving of professional advice to those who can act on it, but also the giving of information to the lawyer to enable him to give sound and informed advice." *Upjohn*, 449 U.S. at 390. The federal courts determine the scope of the privilege by "the principles of the common law ... as interpreted by the courts ... in the light of reason and experience." Fed. Rule Evid. 501; *Swidler*, 524 U.S. at 403; *United States v. Rakes*, 136 F.3d 1, 3 (1st Cir. 1998).

As the First Circuit has stated:

> The attorney-client privilege is well-established and its rationale straightforward. By safeguarding communications between client and lawyer, the privilege encourages full and free discussion, better enabling

8

the client to conform his conduct to the dictates of the law and to present legitimate claims and defenses if litigation ensues.

*In re Keeper of the Records*, 348 F.3d 16, 22 (1st Cir. 2003), citing *Upjohn*, 449 U.S. at 389. The privilege is not designed to protect revelation of incriminating matters, only confidential communications between attorney and client regarding the representation. *In Re Grand Jury Matter*, 969 F.2d 995 (11th Cir. 1992). For this reason, the attorney-client privilege is broader than Fifth Amendment's protection against self-incrimination. *Swidler*, 524 U.S. at 407-408.

### The scope of the attorney-client privilege.

The First Circuit has outlined the essential elements of the privilege as follows:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*Cavallaro v. United States*, 284 F.3d 236, 245 (1st Cir. 2002), quoting *United States v. Mass. Inst. of Tech.*, 129 F.3d 681, 683 (1st Cir.1997). *See also United States v. BDO Seidman*, 337 F.3d 802, 811 (7th Cir. 2003); *United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002); *In Re Grand Jury Matter*, 969 F.2d 995, 997 (11th Cir. 1992) (privilege protects "confidential communications from clients to their attorneys made for the purpose of securing legal advice or services"); *Tax Analysts v. IRS*, 117 F.3d 607, 618 (D.C. Cir. 1997) (same). In determining whether a communication from a client to his attorney was "made in confidence," or in other words, is "confidential," the key question "is whether the client reasonably understood the conference to be confidential." *Kevlin v. Goldstein*, 724 F.2d 844, 849 (1st Cir. 1984). *See also Rakes*, 136 F.3d at 3 (both the

content and context of the conversations between attorney and client support finding that client intended his conversations with his attorney to be confidential).

**In addition to communications made by the client to the attorney, communications from the attorney to the client also fall within the ambit of the privilege.** This added protection includes legal advice given by the attorney to the client. *Upjohn*, 449 U.S. at 390 ("[T]he privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice."); *In re Keeper of the Records*, 348 F.3d 16, 23 (1st Cir. 2003) (a communication is protected if it was "made in confidence and for the purpose of securing or *conveying* legal advice") (emphasis added); *United States v. Under Seal (In re Grand Jury Proceedings)*, 102 F.3d 748, 750 (4th Cir.1996) ("No doubt exists that, under normal circumstances, an attorney's advice provided to a client, and the communications between attorney and client are protected by the attorney-client privilege"); *In re Six Grand Jury Witnesses*, 979 F.2d 939, 944 (2d Cir. 1992) (privilege protects "both information provided to the lawyer by the client and professional advice given by an attorney that discloses such information"); *United States v. Amerada Hess Corp.*, 619 F.2d 980, 986 (3d Cir. 1980) ("Legal advice or opinion from an attorney ... has consistently been held by the federal courts to be within the protection of the attorney-client privilege"). *See also In Re Grand Jury Subpoena*, 341 F.3d 331, 336 (4th Cir. 2003) (question of whether client consulted with attorney regarding filing of an immigration form protected by privilege). Not only is the actual legal advice protected, but also any confidential information regarding that legal advice, such as the specific statutes researched by the attorney. *Chaudhry v. Gallerizzo*, 174 F.3d 394, 402-

403 (4th Cir. 1999). *See also United States v. Amlani*, 169 F.3d 1189, 1195 (9th Cir. 1999) (privilege protects against the disclosure of the "specific nature of the services provided, such as researching particular areas of law").

In addition to advice, the privilege protects from disclosure any "statements made by the lawyer to the client ... where those communications rest on confidential information obtained from the client, or where those communications would reveal the substance of a confidential communication by the client." *Rehling v. City of Chicago*, 207 F.3d 1009, 1019 (7th Cir. 2000) (internal citations omitted). *Tax Analysts v. I.R.S.*, 117 F.3d 607, 618 (D.C. Cir. 1997) (privilege "protects communications from attorneys to their clients if the communications rest on confidential information obtained from the client"); *Town of Norfolk v. United States Army Corps of Engineers*, 968 F.2d 1438, 1458 (1st Cir. 1992) (communications from an attorney to the client are privileged if they "relate to facts communicated for the purpose of securing a legal opinion, legal services or assistance in a legal proceeding"); *Matter of Fischel*, 557 F.2d 209, 211 (9th Cir. 1977) (attorney to client statements protected if they "reveal the substance of the client's own statements"); *American Standard, Inc. v. Pfizer, Inc.*, 828 F.2d 734, 745 (Fed. Cir. 1987) (privilege applies "to lawyer-to-client communications that reveal, directly or indirectly, the substance of a confidential communication by the client"); *United States v. (Under Seal)*, 748 F.2d 873, 874 (4th Cir. 1984) (privilege protects attorney communications to client "if those communications reveal confidential client communications"); *Natta v. Hogan*, 392 F.2d 686, 692-93 (10th Cir.1968) ("The recognition that privilege extends to statements of a lawyer to a client is necessary to prevent the use of the lawyer's statements as admissions of the client").

11

The justification for protecting attorney to client communications was explained by the Ninth Circuit:

> Of necessity the privilege is not limited to the actual communication by the client to the attorney. Ordinarily the compelled disclosure of an attorney's communications or advice to the client will effectively reveal the substance of the client's confidential communication to the attorney. To prevent this result, the privilege normally extends both to the substance of the client's communication as well as the attorney's advice in response thereto.

*Matter of Fischel*, 557 F.2d 209, 211 (9th Cir. 1977).

Because revelation of many attorney-to-client communications inevitably reveals the substance of previous client-to-attorney communications, many courts define the attorney-client privilege as protecting communications "between" the attorney and client. *United States v. Rakes*, 136 F.3d 1, 3 (1st Cir. 1998) (privilege protects "confidential communications between lawyer and client made to facilitate legal services for the client"); *In Re : A Witness Before the Special Grand Jury 2000-2*, 288 F.3d 289, 291 (7th Cir. 2002) (privilege protects "confidential communications made between clients and their attorneys for the purpose of securing legal advice") (citing *Swidler*, 524 U.S. at 403); *In re Grand Jury Subpoena*, 765 F.2d 1014, 1018 (11th Cir. 1985) ("Communications between an attorney and his client made for the purpose of securing legal advice are protected under the attorney-client privilege."); *Mead Data Central, Inc. v. United States Dept. of the Air Force*, 566 F.2d 242, 254 n.25 (D.C. Cir. 1977) ("privilege has consistently included communications of the attorney to the client as well as vice versa"); *Arcuri v. Trump Taj Mahal Assocs.*, 154 F.R.D. 97, 103 (D.N.J. 1994) ("The privilege protects the entirety of the communicative process between the client and the attorney, in both directions, when it is engaged in to facilitate the client's seeking of

12

advice and the attorney's provision of advice."); *Moore v. Tri-City Hosp. Auth.*, 118 F.R.D. 646, 648 (N.D. Ga. 1988) ("The privilege extends to communications from the attorney to the client, as well as the reverse.").

This broad approach to the attorney-client privilege, protecting communications "between" attorney and client, reflects the broad language of Rule 503(b) of the Proposed Federal Rules of Evidence,[2] which provides:

> A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications for the purpose of facilitating the rendition of professional legal services to the client, (1) **between himself** or his representative **and his lawyer** or his lawyer's representative, or (2) between his lawyer and the lawyer's representative, or (3) by him or his lawyer to a lawyer representing another in a matter of common interest, or (4) between representatives of the client or between the client and a representative of the client, or (5) between lawyers representing the client.

In applying the broad approach, at least one circuit have gone as far as to protect an attorney's communications to his client without the qualification that the communications must contain confidential matters revealed by the client earlier to the attorney. *Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1370-71 (10th Cir. 1997) (considering both the narrow and broad approaches before deciding the latter is appropriate). Additionally, in *In Re Sealed Case*, 737 F.2d 94 (D.C. Cir. 1984), the court expressed a broad view of the protection afforded to communications from attorney to client:

> Inevitably, attorneys' opinions reflect an accumulation of education and experience in the law and the large society law serves. In a given case, advice prompted by the client's disclosures may be further and inseparably

---

[2] Although Congress did not adopt this rule, courts have relied upon it as an accurate definition of the federal common law of attorney-client privilege." *United States v. Spector*, 793 F.2d 932, 938 (8th Cir. 1986). 2 J. Weinstein, Evidence ¶ 503[02] at 503-17 (1975) ("despite the failure of Congress to enact a detailed article on privileges, Standard 503 should be referred to by the Courts").

13

> informed by other knowledge and encounters. We have therefore stated that the privilege cloaks a communication from attorney to client based, *in part at least*, upon a confidential communication to the lawyer from the client.

*Id.* at 99 (emphasis supplied) (internal quotation omitted).

### Attorney as "conduit."

Government counsel has informed Parker's counsel that it relies on four cases for its contention that the attorney-client privilege does not bar eliciting information about whether Parker told Foley of Burroughs' call, and, if so, when. Three of the four cases relied on as support for its contention that Parker was merely a "conduit" for information between the Assistant U. S. Attorney and his client are *United States v. Clemons*, 676 F.2d 124 (5th Cir. 1982), *United States v. Uptain*, 552 F.2d 1108 (5th Cir. 1977) (*per curiam*), and *United States v. Hall*, 346 F.2d 875, 882 (2d Cir. 1965). These cases hold that a communication made by defense counsel to his client regarding the time and place of trial or a hearing are not confidential, and are therefore not protected by the attorney-client privilege. *Clemons*, 676 F.2d at 125; *Uptain*, 552 F.2d at 1109; *Hall*, 346 F.2d at 882. *See also United States v. Gray*, 876 F.2d 1411, 1415 (9th Cir. 1989); *In re Grand Jury Proceedings*, 568 F.2d 555, 557 (8th Cir. 1977); *United States v. Freeman*, 519 F.2d 67, 68-69 (9th Cir. 1975) (adopting holding and reasoning of *Hall*); *United States v. Bourassa*, 411 F.2d 69, 74 (10th Cir. 1969) (relating notice to client of trial date "was counsel's duty as an officer of the court, and was not within the privilege").[3] *See also Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110 (6th Cir. 1995) (attorney's message to client concerning date and time of court proceedings not privileged communication under

---

[3] Each of these cases (*Clemons, Uptain, In Re Grand Jury Proceedings, Freeman,* and *Bourassa*) refers to *Hall* as their legal support, citing its reasoning and holding. *Hall* appears then to be the important case of the bunch.

14

Ohio law and, thus, no privilege attached to mere mailing, or failure to mail, of motion for default judgment to client); *Brinton v. Dep't of State*, 636 F.2d 600, 604 (D.C. Cir. 1980) ("it is clear that when an attorney conveys to his client facts acquired from other persons or sources, those facts are not privileged"); *Downie v. Superior Court*, 888 P.2d 1306, 1308 (Alaska App. 1995) ("[T]he date set for trial is a matter of public record and cannot conceivably be considered confidential").

In *Hall*, the defendant was charged under the bail-jumping statute. At trial, the defendant's assigned attorney in the underlying case testified that he was informed by the AUSA that the defendant needed to appear in court on the pertinent dates and that he subsequently relayed those instructions to his client. The court found "no invasion of the attorney-client privilege resulting from [defense counsel's] formal testimony that he conveyed to his client the [AUSA's] routine message that the accused's presence was required at each calendar call." 346 F.2d at 882. The court's reasoning was based on the fact that the "relaying of this message [was] not in the nature of a confidential communication." *Id.* "Defense counsel served merely as a conduit for transmission of a message." *Id.* The court found that it was the AUSA's duty to inform the defendant as to when he was required to be in court, and it was defense counsel's duty to "relay the instructions to his client *in his capacity as an officer of the court.*" *Id.* (emphasis added).[4]

---

[4] In *Hanks v. United States*, 420 F.2d 412 (10th Cir. 1970), the Tenth Circuit, in *dicta*, called *Hall* into question. "[W]e have some reservations as to the correctness of the conclusions reached [in *Hall*]." *Id.* at 413. The issue in *Hanks* was whether testimony by defense counsel that he told defendant the date for trial denied defendant effective assistance of counsel. Because defendant had been represented by co-counsel as well at trial, the court found that he was not deprived of counsel. However, the court expressed concern over the area of attorney-client privilege where an attorney testifies as to telling his client the date of trial, especially where, as in that case, the full evidence elicited from defense counsel was more than simply" routine messages." *Id.* at 413.

15

The Texas Criminal Court of Appeals explained the "conduit" rationale of the Circuit Court decisions in *Austin v. Texas*, 934 S.W.2d 672 (Ct. Crim. App. 1996):

> These cases are based upon the rationale that the attorney is a 'mere conduit' for the trial judge in passing on a routine message, i.e. the trial date, and such communication is not confidential *because it does not involve the subject matter of the client's legal problems.* ... The communication of a trial date is a matter collateral to the attorney-client relationship.

*Id.* at 675. *See also State v. Ogle*, 682 P.2d 267, 269 (Or. 1984) (stressing fact that when attorney notifies client of court date, attorney "is acting merely as an agent for the court").

In the fourth and most important case relied on by the government, *In re Grand Jury Testimony of Attorney X*, 621 F. Supp. 590 (E.D.N.Y. 1985), the court expanded the rule of *Hall*. In that case, information concerning a pending grand jury investigation was given to an attorney by an unspecified third party, and the attorney relayed this information to his client. The court held that the attorney's communication to the client was not privileged because it was not confidential. *Id.* at 592. The attorney, in conveying this information, was not acting as a legal advisor, but rather as a "conduit" of information. *Id.*, citing *Hall*, 346 F.2d 875. The court rejected the attorney's argument that although the information itself might not be confidential, disclosure of it would permit inferences as to confidential matters such as the concerns of his client, as such concerns were no longer confidential. *Id.* Thus, the case seems to leave open the possibility that, if revelation of the sought-after information would permit inferences as to confidential matters such as the concerns of his client or the reasons why the client sought legal advice, the privilege may protect such communications.

More recently, in *McKay v. Commissioner*, 886 F.2d 1237 (9th Cir. 1989), the Ninth Circuit extended the rule of *Hall* and its Ninth Circuit counterpart, *Freeman*. In *McKay*, a delinquent taxpayer's attorney testified that he gave the taxpayer a copy of an IRS notice that his taxes were deficient in ample time for the client to comply with the law. The court held that such a delivery of notice was not protected by the privilege, as the attorney was merely a "conduit." "[The attorney] testified only that he *had conveyed information from the government to his client.*" *Id.* at 1238 (emphasis added). *See also United States v. Ramirez*, 608 F.2d 1261, 1268 n. 12 (9th Cir. 1979) ("Mere conveyance of an offer from the Government without any discussion of advice arguably does not fall within the scope of the privilege").

In 1997, the Ninth Circuit limited the scope of both *Freeman* and *McKay*. In *United States v. Bauer*, 132 F.3d 504 (9th Cir. 1997), the defendant was convicted of making false statements on and omitting assets from a bankruptcy petition. At his trial, his bankruptcy attorney testified regarding statements he made to the defendant concerning the defendant's duty to disclose all property in his bankruptcy petition and the perjury implications of falsifying a bankruptcy petition. The court distinguished *Freeman* and *McKay*, where the circumstances presented evoked "an image of attorney as messenger, wherein the contents of a message that *otherwise amounts to public information* is not protected by the attorney-client privilege." *Id.* at 508 (emphasis supplied). "The only issue in those cases involving the conveyance of [otherwise public] information is *notice*." *Id.* (emphasis added). The court also noted the attorney's duty as an officer of the court to relay such information in his "conduit" capacity. *Id.* The court

17

then held that the attorney's statements to the defendant were purely legal advice, protected by the privilege. *Id.* at 509.

## Application of Law to Facts

In this case, the information Parker received from the AUSA is not otherwise public information. Parker would not be acting as an officer of the court by relating the information to his client, but would be acting solely as his client's attorney, discussing information received by him which potentially incriminates his client and implicates previous discussions he may have had with his client. The putative communication of the information from Parker to his client would not be a matter collateral to the attorney-client relationship. The information would directly involve the subject matter of the client's legal problems. By discussing the information with his client, Parker would not be merely acting as a messenger, giving notice to his client of the Assistant U.S. Attorney's statement to him. Instead, the information would necessarily be conveyed in the context of giving his client legal advice concerning the information. As the caselaw demonstrates, you cannot cut out certain statements made in conversations between an attorney and his client. If Parker relayed the information to his client, it transmitted as part of providing legal services to the client in a confidential manner and should be protected by the attorney-client privilege.

Other factors distinguish this situation from the caselaw relied upon by the government. Unlike the *Attorney X* case, this involves a trial subpoena, not a grand jury subpoena. The court supervising a grand jury might be able to fashion a particular series of questions so as to insure that privileged matter is not divulged. In a trial setting that would be impossible. For instance, on direct examination, would the government want to

know what Parker's account of his conversation with Burroughs is? What if Parker's memory of what was said by Assistant U. S. Attorney Burroughs differs from her memory? Would the parties be able to examine notes that Parker might have made of the conversation with Burroughs? Would the government want to know what Parker said to Foley? What if the statements that Parker made to Foley, if there were any, reveal other, confidential communications between Parker and Foley?

The timing issue is also important. One would think that the only possible relevance of the Parker-Foley conversation would be if it occurred between the time of the Parker-Burroughs conversation and the Vinal phone call. The Superseding Indictment, however, merely says that the Burroughs-Parker conversation occurred in "early June." Does the government not know when the conversation took place?

Vinal has a right to cross-examine the witnesses against him. If Parker were to testify that he conveyed the information to Foley, then presumably Vinal's counsel could cross-examine Parker to try to establish that it was not so. He could use phone records to draw Parker's testimony into question, necessitating further exploration of the circumstances of the communication.

This is not a situation where the attorney is merely a conduit for some public official, like the trial lawyers who were required to testify that they informed the defendant of the trial date. Throughout his representation of Foley, Parker has done his utmost to exercise informed judgment in representing his client. He should not be

required to disclose an iota of his judgment to the government at this trial.

### III. The Government Has Not Shown Any Reason to Believe that Mr. Parker's Testimony Will Be Material – That Is, Helpful -- to its Cause

Under the *Stern* case, described above, to be enforceable, a trial subpoena must lead to evidence that will be relevant and material. Material is this sense means helpful to the party's position. The government has absolutely no basis to say that Mr. Parker's testimony will be helpful in its prosecution of Mr. Vinal. In the absence of any such showing, the subpoena should be quashed.

### CONCLUSION

For the foregoing reasons, the Court should grant the motion to quash the subpoena served on E. Peter Parker.

Respectfully submitted

E. Peter Parker, Esq.
By his attorney

_____
Charles W. Rankin
BBO No. 411780
Rankin & Sultan
One Commercial Wharf North
Boston, MA  02110
(617) 720-0011

Robert Foley
By his attorney

_____
Max D. Stern
BBO No.
Stern, Shapiro, Weissberg & Garin
90 Canal Street
Boston, MA  02114
(617) 742-5800

20