UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 03-CR-10354-PBS |
| | ) | |
| Michael Vinal, | ) | |
| Defendant. | ) | |

**GOVERNMENT'S OPPOSITION TO MOTION TO QUASH SUBPOENA**

The United States submits this opposition to the Motion of E. Peter Parker, Esq. and Robert Foley To Quash Subpoena Calling for Mr. Parker's Testimony at Trial. For the reasons explained below, the motion by Mr. Parker and his client Mr. Foley's (the "Movants") is without merit and should be denied.

**FACTUAL BACKGROUND**

This is a witness tampering prosecution against the defendant Michael Vinal under 18 U.S.C. § 1512(b)(3). The Superseding Indictment alleges that during the relevant time period the government was conducting a criminal investigation of Michael Vinal's employer, referred to as "ABC Company," for fraudulent billings for asphalt on federally funded highway projects.[1] According to the Superseding Indictment, Vinal worked on a crew of ABC Company that was supervised by one "R.F.," whom the Movants correctly identify as Robert Foley.

In early June 2003, Foley's attorney, Peter Parker, was told by Assistant U.S.

---

[1] As noted by the Movants, the investigation is continuing.

Attorney Allison Burroughs that a conversation between Foley and a cooperating witness had been recorded. AUSA Burroughs told Parker some details about the substance of the conversation, although the identity of the cooperator was not specifically disclosed. AUSA Burroughs told Parker that Foley was the subject of a grand jury investigation and would likely become a target. The Movants do not dispute that AUSA Burroughs told these things to Mr. Parker. Subsequently, on June 18, 2003, Vinal called the cooperator and left a threatening message on the cooperator's work voice mail machine.

To prove intent on the part of the defendant Vinal, it is important for the government to prove that Vinal knew about the victim's cooperation with the government. Accordingly, the government has subpoenaed Attorney Peter Parker to give limited testimony at trial on this point. Specifically, in a letter accompanying the subpoena, the government has stated to Mr. Parker, "We will be asking you questions about a very limited topic: whether you passed along to your client, Mr. Foley, the information AUSA Burroughs conveyed to you about the recorded phone call between Mr. Foley and a cooperating witness; and, if so, when." Exhibit C to Affidavit of E. Peter Parker.

Foley has not been indicted. While Foley is a target in the ongoing investigation of asphalt billing fraud, he is not a defendant or target with regard to any obstruction or witness tampering case or investigation.

**ARGUMENT**

I.    **Compliance With the Subpoena Will Not Impermissibly**

### Interfere With the Attorney-Client Relationship Between Parker and Foley

The Movants initially challenge the subpoena as "unreasonable and oppressive" (apart from the privilege issue), apparently theorizing that the government has subpoenaed Foley in order to punish him for not cooperating in the government's investigation of the ABC Company and to "drive a wedge" between him and his attorney.

The Movants' retaliation theory is beyond the pale. AUSA Burroughs, who the Movants say is the force behind the alleged governmental conspiracy, is not even assigned to this case. More importantly, the Superseding Indictment on its face indicates that the government has a completely proper objective in seeking Parker's testimony. Parker's testimony that he conveyed to Foley what he had learned from AUSA Burroughs will help prove that the defendant, who worked closely with Foley, knew that the person he later threatened had in fact cooperated with the government in recording the conversation between Foley and the cooperator. The testimony is highly relevant to the issues of motive and intent. The sinister motive that the Movants suggest is wholly unwarranted, particularly where an obviously valid purpose to the subpoena is apparent on the face of the Superseding Indictment.[2]

The Movants contend that the subpoena to Mr. Parker is "unreasonable and

---

[2] Thus, the Movant's assertion that AUSA Burroughs acted improperly in sending a "target letter" directly to Foley is irrelevant and collateral to the real issues presented here.

oppressive" under Rule 17(c) of the Federal Rules of Criminal Procedure.[3] They rely principally on In re Grand Jury Matters, 751 F.2d 13 (1st Cir. 1984), and contend that Parker's testimony at trial would impermissibly interfere with the attorney-client relationship between Parker and Foley. In In re Grand Jury Matters, the court of appeals upheld a district court order quashing grand jury subpoenas served on four attorneys whose clients had been indicted and were awaiting trial in state court on state drug charges and who were simultaneously being investigated by the grand jury. The subpoenas required the attorneys to appear before the grand jury accompanied by records relating to legal fees, monies received by the attorneys from their clients, and the dates and times of communications between one of the clients and his attorney's firm. 751 F.2d at 14. The court of appeals observed that, "[i]n the absence of privilege, courts normally will ask only whether the materials requested are relevant to the investigation, whether the subpoenas specify the materials to be produced with reasonable particularity, and whether the subpoena commands production of materials covering only a reasonable period of time." 751 F.2d at 18.[4] The court of appeals nonetheless upheld the district

---

[3] Rule 17(c) governs subpoenas duces tecum, not subpoenas ad testificandum. See generally 2 Miller, Federal Practice and Procedure: Criminal 3d §275 (2000) ("Rule 17(c) applies only to a subpoena duces tecum. It gives no authority to quash a subpoena to compel testimony on the ground that the subpoena is unreasonable or oppressive."); accord 25 Moore's Federal Practice 3d § 617.07[3] (2003). However, the First Circuit has suggested that the analysis applicable to motions to quash subpoenas for testimony is "roughly the same" as that governing subpoenas duces tecum.

[4] The court was articulating the normal standard applicable to a grand jury subpoena. In the case of a trial subpoena, the normal inquiry is limited to whether the

court's order because the subpoenas threatened serious interference with the attorney-client relationships between the attorneys and their clients at a "particularly sensitive moment" when counsel were preparing for a criminal trial in state court. Id. The court ruled, "While the district court had no right indefinitely to refuse to permit the grand jury to secure unprivileged information, we think it could, within its supervisory powers, control the timing of the subpoenas to this decree." Id. The court affirmed the district court's order "without prejudice to the government's right to renew the subpoenas at a more suitable moment or upon a more substantial showing of immediate urgency and need." Id. at 19-20.

    The present case is a far cry from In re Grand Jury Matters. Here, the government's subpoena does not seek any documents; Parker is not preparing to defend his client in a trial; Attorney Parker's client has not even been indicted; and the testimony sought relates to a subject different than the subject of the investigation in which his client is a target. It is telling that Mr. Parker does not assert in his affidavit that compliance with the subpoena would cause any actual inconvenience or conflict in his representation of his client Foley. Furthermore, the government's need for Mr. Parker's testimony is imminent, given the December 13, 2004, trial date. Mr. Parker, by contrast, as not identified any special hardship in making the very brief appearance that will be required for his testimony. The subpoena is neither unreasonable nor oppressive.

---

testimony sought is both relevant and material. Stern v. United States District Court, 214 F.3d at 17.

## II. The Testimony Sought By the Subpoena Is Not Protected By the Attorney-Client Privilege

### A. The Communication Is Not Privileged

The Movants present a skewed description of the attorney-client privilege. As stated by the Supreme Court in United States v. Bryan, 339 U.S. 323 (1950), "'For more than three centuries it has now been recognized as a fundamental maxim that the public . . . has a right to every man's evidence. When we come to examine the various claims of exemption, we start with the primary assumption that there is a general duty to give what testimony one is capable of giving, and that any exemptions which may exist are distinctly exceptional, being so many derogations from a positive general rule.'" 339 U.S. at 331 (quoting 8 J. Wigmore, Evidence § 2192, p. 64 (3d ed.1940)). "Evidentiary privileges in litigation are not favored, and even those rooted in the Constitution must give way in proper circumstances." Herbert v. Lando, 441 U.S. 153, 175 (1979). See Jaffee v. Redmond, 518 U.S. 1, 8 (1996) ("'Exceptions from the general rule disfavoring testimonial privileges may be justified, however, by a 'public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth.'" (quoting Trammel v. United States, 445 U.S. 40, 50 (1980)). This principle applies to the attorney-client privilege. As observed by the First Circuit in In re Keeper of the Records, 348 F.3d 16, 22 (1st Cir. 2003), "the [attorney-client] privilege is not limitless, and courts must take care to apply it only to the extent necessary to achieve its underlying goals. . . . In other words, the attorney-client privilege must be narrowly construed because it comes

6

with substantial costs and stands as an obstacle of sorts to the search for truth." Id., citing In re Grand Jury Subpoena (Custodian of Records, Newparent, Inc.), 274 F.3d 563, 571 (1st Cir. 2001), and United States v. Nixon, 418 U.S. 683, 709-10 (1974). And see Cavallaro v. United States, 284 F.3d 236, 245-246 (1st cir. 2002) ("there is a more general reason for construing the attorney-client privilege narrowly: the belief that '[t]he investigation of truth and the enforcement of testimonial duty demand the restriction, not the expansion, of these privileges'"), quoting 8 J. Wigmore On Evidence (3d ed.1940) § 2192, at 73.

The Movants refer to two cases which purportedly take a broad approach that all communications by an attorney to his client are privileged even where the communication does not reveal confidential communications from the client to the attorney. See Movants' Memorandum at 13, citing Sprague v. Thorn Americas, Inc., 129 F.3d 1355, 1370-71 (10th Cir. 1997), and In re Sealed Case, 737 F.2d 94 (D.C. Cir. 1984).[5] The latter case does not support the proposition attributed to it by the Movants. The court in that case held, among other things, that a district court did not err in ordering an attorney to testify as to a conversation with his client in which he related to the client a conversation he overheard from third parties. Id. at 99-100. The court also observed generally that "[i]t remains the claimant"s burden . . . to present to the court sufficient

---

[5] Sprague is distinguishable because the attorney communications at issue involved legal opinions. In the present case the government does not seek Attorney Parker's communication of legal opinions or advice.

facts to establish the privilege; the claimant must demonstrate with reasonable certainty . . . that the lawyer's communication rested in significant and inseparable part on the client's confidential disclosure." Id. at 98 (citations omitted). Moreover, other courts have also rejected the broad approach to the privilege, and instead have ruled that the attorney's communications are not privileged unless they reveal client confidences. E.g., SCM Corp. v. Xerox Corp., 70 F.R.D. 508, 522 (D. Conn. 1976). As the court reasoned in SCM Corp., "[u]nless the legal advice reveals what the client has said, no legitimate interest of the client is impaired by disclosing the advice." Id. See also Schlefer v. United States, 702 F.2d 233, 245 (D.C. Cir.1983) (lawyer-client privilege protects communications from attorney to client when confidential and based on confidential information supplied by client); Walsh v. Northrop Grumman Corp., 165 F.R.D. 16, 18 (E.D. N.Y.1996) (second circuit "remains committed to the narrowest application of the privilege such that it protects only legal advice that discloses confidential information given to the lawyer by the client"); Montgomery v. Leftwich, Moore & Douglas, 161 F.R.D. 224, 226 (D. D.C.1995) (communications made by attorney to client are shielded only if they rest on confidential information obtained from the client); Republican Party v. Martin, 136 F.R.D. 421, 426 (E.D. N.C.1991) (the privilege does not apply to legal advice which does not reveal client confidences).[6]

---

[6] And see In re Tire Workers Asbestos Litigation, 125 F.R.D. 617, 621-22 (E.D. Pa.1989) (under Pennsylvania law, attorney's speech at union meeting outlining possible rights or union members was not privileged because speech was not based on client confidences); Potts v. Allis-Chalmers Corp., 118 F.R.D. 597, 602-05 (N.D. Ind.1987)

8

In the present case the government seeks to prove that Foley received certain factual information that subsequently was used by another to motivate the commission of a crime.[7]  It is highly likely that Parker relayed the information to Foley, given Parker's professional obligation to "keep a client reasonably informed about the status of a matter."  Rule 1.4(a), Mass. Rules of Prof. Responsibility.  The government does not seek to inquire about legal advice that Parker gave to Foley or what Foley said to Parker.  The information was known to the government, and thus was not "confidential."  There is nothing to suggest that disclosure would tend to reveal confidential communications by Foley to his attorney, or Attorney Parker's legal advice to Foley, or any other confidential information or communication.

The case law addressing this particular issue, limited as it is, has uniformly concluded that the conveyance of such information is not protected by the attorney-client privilege.  A case on point is <u>In re Grand Jury Testimony of Attorney X</u>, 621 F. Supp. 590 (E.D. N.Y. 1985).  In that case the government was conducting a grand jury investigation of alleged crimes by members of the Lucchese family.  Evidence was obtained that an attorney's client was involved in the conduct.  Subsequently, the grand jury obtained

---

(attorney required to reveal legal advice where no showing had been made that advice would disclose client confidences).  <u>See</u> <u>generally</u>, Scott N. Stone and Robert K. Taylor, Testimonial Privileges, § 1.25 (2d ed.1995).

[7] If Foley revealed the information to Vinal or others, as the government believes, then that disclosure would have resulted in a waiver by Foley of any attorney-client privilege.  <u>See</u> <u>In re Grand Jury Subpoena (Zerendow)</u>, 925 F. Supp. 849, 855 (D. Mass. 1995) (Saris, J.).

evidence that the client had acted to criminally obstruct the investigation. The government sought to compel the attorney to testify whether he had learned about the grand jury investigation from a third party, whether he had learned that his client's name had been mentioned, and whether and when he had conveyed this information to the client. The court held that the information was not protected by the attorney-client privilege, stating, "The information about the grand jury investigation that the Attorney obtained from a third person and relayed to his client is clearly not confidential. Where an attorney is a mere 'conduit' the client may not invoke the privilege." Id. at 592, citing United States v. Hall, 346 F.2d 875 (2d Cir. 1965). The court found unpersuasive the client's arguments that disclosure of the information would permit inferences as to confidential matters such as concerns of the client or advice given by the attorney to the client. Id. The court also observed that the fact that information may incriminate the client is not a valid reason by itself to invoke the attorney-client privilege. Id.

As pointed out in the Movant's brief (at 14-15), the Hall case and other cases have held, in the context of bail-jumping cases, that an attorney may be required to testify as to the attorney's communication to his client regarding the date and place of a trial or other hearing. In those cases, as in In re Grand Jury Testimony of Attorney X, the attorneys established a critical element in a prosecution against the client. Here, the government is not prosecuting Foley, and Parker's testimony is not being used against his client.

A proper balancing of the relevant public policy objectives demonstrates that the communication at issue here is not privileged. There is virtually no risk that disclosure

would reveal a confidential communication of the client or the legal opinion or advice of the attorney.  To be sure, Parker's disclosure of the information to Foley may have been accompanied by legal advice regarding whether Foley should cooperate with the government through a promise of immunity.  But the government simply has no interest in that subject, and there is no meaningful risk that that sort of communication would be disclosed.  There is no significant risk that disclosure would "would implicate the client in the very matter for which the client originally sought legal advice."  In re Grand Jury Proceedings (Twist), 689 F.2d 1351, 1352 (11th Cir.1982); see United States v. Strahl, 590 F.2d 10 (1st Cir. 1979) (holding that the attorney-client privilege did not apply to attorney's testimony that his former client had given him a stolen Treasury note, and noting lack of indications that the client had sought legal advice concerning the client's counterfeiting activities); and see In re Special Grand Jury No. 81-1 (Harvey), 676 F.2d 1005, vacated on other grounds, 697 F.2d 112 (4th Cir.1982); United States v. Buitrago-Dugand, 712 F. Supp. 1045, 1047-48 (D. P.R. 1989).  Furthermore, requiring Parker to testify will not "drive a wedge" between Parker and his client because the testimony will relate only the to witness tampering prosecution of Vinal.  Foley is neither a defendant nor a target in the witness tampering case, and there is no suggestion that Parker was retained to represent Foley in connection with a witness tampering or obstruction investigation.  It is difficult to imagine how Parker's testimony could adversely affect Foley in regard to the separate fraud investigation.  On the other side of the equation, the public policy in favor of truth-seeking weighs heavily against

application of the privilege. The significance of the disputed communication lies not in relation to legal representation but in the fact that it was disclosed by Foley to a third party – Vinal – who was then motivated to commit a federal crime. Absent the testimony, the truth about Vinal's knowledge and motive may never be known. The application of the privilege in this type of situation would serve only to allow clients to hide behind the attorney-client privilege to conceal future criminal conduct.[8]

    B.  The Movants Have Not Shown That the Privilege Was Not Waived

As acknowledged by the Movants (brief p. 9), one of the essential elements of the attorney-client privilege is that it not be waived. United States v. Mass. Inst. of Tech., 129 F.3d 681, 683 (1st Cir. 1997). The burden is on the person claiming the privilege to demonstrate each of the elements, including that the privilege has not been waived. In re Keeper of the Records, 348 F.3d 16, 22 (1st Cir. 2003) ("the party who invokes the privilege bears the burden of establishing that it applies to the communications at issue and that it has not been waived"); see also Hodges, Grant & Kaufmann v. United States, 768 F.2d 719, 721 (5th Cir.1985); In re Grand Jury Proceedings, 680 F.2d 1026, 1029 (5th Cir. 1982) (concurring op.) ("The party who invokes the attorney-client privilege has the burden of establishing both the existence of an attorney-client relationship and the

---

[8] Consider the analogous hypothetical: Lawyer's Client is under investigation or indictment, and Lawyer tells Client, "Joe Smith ratted on you." Client subsequently murders Joe Smith. Under the Movants' theory, the attorney-client privilege would prevent the government from discovering the communication or using it to prove intent. Public policy does not support such a result.

confidential nature of the communication.") (citing United States v. Flores, 628 F.2d 521, 526 (9th Cir.1980).

In this case the allegations of the Superseding Indictment strongly suggest that Foley disclosed the substance of the communication at issue to Vinal or others on his paving crew. Such a disclosure would constitute a waiver of the claimed privilege. See e.g., In re Keeper of the Records, 348 F.3d at 22 ("When otherwise privileged communications are disclosed to a third party, the disclosure destroys the confidentiality upon which the privilege is premised."). The Movants have made no attempt whatsoever to demonstrate the absence of a waiver; instead they attempt to use the privilege as a mechanism to avoid such a showing. Given the circumstantial evidence that Foley disclosed the substance of the communication to one or more third parties, Foley should not be permitted to use his claim of privilege to avoid establishing one of the essential elements of that privilege.

**III.    Attorney Parker's Testimony Is Obviously Material**

The Movants make a weak argument that the government has not shown that Mr. Parker's testimony is material. As pointed out above, the Superseding Indictment on its face demonstrates a strong inference that Foley learned the information about the recorded conversation from Mr. Parker and subsequently disclosed it, directly or indirectly, to Vinal, who then threatened the cooperator. Mr. Parker likely had a professional responsibility to inform his client about the information, see Rule 1.4(a), Mass. Rules of Prof. Responsibility. Common sense indicates that he did. It is

13

reasonable to infer that Vinal's threatening telephone call was motivated by his knowledge of this information. (The cooperator had left the ABC Company approximately six months previously and Vinal had no other reason to contact him.) The only reasonable explanation is that Foley disclosed what he had learned about the cooperator. The testimony of Mr. Parker is plainly material to Vinal's motive and intent.

**CONCLUSION**

For the foregoing reasons, the motion to quash should be denied.

                                  Respectfully submitted,

                                  MICHAEL J. SULLIVAN
                                United States Attorney

By:   /s/ George B. Henderson, II
       Adam J. Bookbinder
       George B. Henderson, II
       Assistant U.S. Attorneys
       John Joseph Moakley U.S. Courthouse
       1 Courthouse Way, Suite 9200
       Boston, MA 02210
       (617) 748-3112
       (617) 748-3272

Dated: November 23, 2004

**CERTIFICATE OF SERVICE**

     I hereby certify that a true copy of the foregoing document was served upon the following counsel on this date, November 23, 2004:

Kevin J. Reddington
Law Offices of Kevin J. Reddington
1342 Belmont Street
Suite 203
Brockton, MA 02301

Charles W. Rankin, Esq.
Rankin & Sultan
One Commercial Wharf North
Boston, MA  02110

Max Stern, Esq.
90 Canal Street
Boston, MA  02114

                                /s/ George B. Henderson, II
                                George B. Henderson, II
                                Assistant U.S. Attorney