UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | Criminal No. 03-10354-PBS |
| MICHAL VINAL | ) ) ) | |

### GOVERNMENT'S REVISED TRIAL BRIEF

At the Court's request, the government has revised the sealed trial brief it filed November 24, 2004, so that this brief could become part of the public case record. This revised brief also incorporates evidence the government has recently received that slightly alters the theory we will be presenting at trial.

On November 20, 2003, a grand jury indicted Michael Vinal on one count of witness tampering for threatening a witness in a grand jury investigation. The trial in this case is scheduled to begin December 13, 2004. In this trial brief we will summarize the evidence we expect to present at trial and then briefly analyze the legal issues that we anticipate may arise during the trial.

### OVERVIEW

This case arises out of an ongoing grand jury investigation into a road construction and supply company, referred to in the indictment as ABC Company, which may have fraudulently overbilled customers on roadway and other paving projects. The defendant, Michael Vinal, is an ABC Company employee, who, on June 18, 2003, left a threatening

message on the work answering machine of a former ABC Company employee who is cooperating with the investigation.

## THE DEFENDANT

Michael Vinal is a 39-years-old divorced father who lives in Halifax, Massachusetts, which is in Plymouth County. He has a long criminal record, which includes the following convictions in the past 10 years:

>Malicious destruction of property, 12/97, 3 months suspended
>
>Leaving scene of property damage, 7/97, probation
>
>Larceny from a person, 1/97, probation
>
>Disorderly person, 3/96, guilty filed
>
>Disturbing the peace, 3/96, guilty filed
>
>Murder threat, 3/96, 9 months committed (concurrent with ABPO)
>
>A&B on police officer, 3/96, 9 months committed
>
>OUI (3rd time), 3/95, 9 months committed
>
>Larceny, Uttering 2/95, CWOF, VOP
>
>Knowingly Receiving Stolen Property, 1/88, fine

## THE WITNESS TAMPERING

Vinal's witness tampering stems from the investigation into ABC Company for billing customers for non-existent loads of asphalt on paving projects (including federally-funded highway projects) and inflating the weight of asphalt loads actually delivered. As part of this investigation, agents from the Department of Transportation obtained a search warrant and

executed a search, in March 2003, of ABC Company's headquarters in Hanover, Massachusetts. At the time of the search, the agents also served on the company a grand jury subpoena seeking extensive business records. Because the agents conducted the search during business hours, numerous ABC Company employees quickly learned about it and, therefore, about the Department of Transportation investigation.

The cooperating witness, a former ABC Company employee, is cooperating with the government in the investigation and has been given immunity. As part of his cooperation, in March 2003, he made a recorded phone call to a current ABC Company employee, referred to in the indictment as R.F. In the call, the cooperating witness told R.F. that federal agents had approached him and that he had decided to cooperate. In response, R.F. made several potentially incriminating statements. R.F. is Vinal's direct supervisor, and the two have worked closely together for years on a six-to-eight person crew.

During the Spring of 2003, Allison Burroughs, the assistant U.S. Attorney directing the ABC Company investigation, had several conversations with R.F.'s attorney, in which she attempted to persuade him that it was in R.F.'s best interest to cooperate with the government.[1] R.F., however, declined to do so. On June 12, 2003, AUSA Burroughs sent

---

[1] At some point in early June, 2003, AUSA Burroughs explained to R.F.'s attorney, in a phone conversation, that the government had significant evidence against R.F., including a recorded phone conversation with a cooperating witness. While Burroughs did not identify the cooperating witness, she did read some excerpts from the transcript of the recording that may have allowed R.F. to identify the cooperator. R.F.'s attorney has given the government an affidavit, however, stating that he did not communicate with his client between the time he had this conversation with Burroughs
(continued...)

to counsel for ABC Company grand jury subpoenas for K.F., an ABC Company employee who is R.F.'s brother, and D.T. an employee who worked, with Michael Vinal, on R.F.'s paving crew.

We will argue that the conversations between Burroughs and R.F.'s attorney show increasing pressure on Vinal's boss, R.F., during the Spring of 2003, as does the June 12 subpoena to R.F.'s brother. The subpoena on the same day to Vinal's co-worker, D.T., shows that, in mid-June, the investigation was getting closer to Vinal.

Shortly thereafter, on June 18, 2003, Vinal made a phone call to the cooperating witness's new place of business and left a threatening message directed at the cooperating witness on his work answering machine. On June 20, 2003, Department of Transportation agents took possession of the answering machine and made a recording of the messages on it.

The threatening message stated:

"Yeah, [cooperating witness], [cooperating witness], listen this is Mike. I'm on ya and I got dudes on your back down there. You suck and you're gonna pay. You're gonna find out. Good bye."

At the time the answering machine was seized, its internal clock was 14 hours and 14 minutes ahead of the actual time. According to the machine's time/date stamp, the threatening message had been received on Thursday, June 18, 2003, at 11:16 A.M. Given

---

[1](...continued)
and June 18, 2003, the date of the threatening voicemail. The government will therefore not be arguing at trial that the conversation between Burroughs and R.F.'s attorney precipitated the threat.

the machine's 14 hour and 14 minute variation from the correct time, this message was actually received at approximately 9:02 P.M., Thursday, June 18, 2003.

The cooperating witness identified the voice on the message as that of his former co-worker, Mike Vinal. Telephone toll records for Vinal's home telephone confirm that the call to the cooperating witness's work phone number was placed from Vinal's residence. Specifically, the records indicate that a call lasting 32 seconds was placed from Vinal's home phone to the cooperating witness's office at 9:00 p.m. on June 18, 2003, the same time the threatening message was received on the machine.[2]

## THE STATUTE

The text of 18 U.S.C § 1512(b) reads, in pertinent part:

> (b) Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to–
>
> (3) hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, supervised release, parole, or release pending judicial proceedings;
>
> shall be fined under this title or imprisoned not more than ten years, or both.

To establish that Vinal committed this offense, the government must prove the following elements:

---

[2] The disparity between the adjusted 9:02 time and the 9:00 time on Vinal's phone records can easily be explained by the fact that the phone company's clock and the answering machine clock were not synchronized.

<u>First</u>:        That the defendant knowingly used intimidation or threats toward another person or persons;

<u>Second</u>:     That the defendant acted with the intent to hinder, delay, or prevent the communication of information to a federal law enforcement officer or judge of the United States; and

<u>Third</u>:      The information related to the commission or possible commission of a federal offense.

## THE EVIDENCE

A.  <u>Witnesses</u>

The government currently plans to call only three witnesses, although we may be adding a fourth. As soon as we make the decision to add this witness – a decision that has been delayed because of issues relating to the ABC Company investigation – we will immediately notify defense counsel and provide him with the relevant discovery.

Department of Transportation Special Agent Todd Damiani will testify in the most general terms about the ABC Company investigation and the search. He will then describe what he did to take possession of the answering machine in the cooperating witness's office, to determine the time when the message was left on the machine, and to record the message onto a cassette. We expect to introduce the recording of the message through Agent Damiani and to play the message to the jury.

AUSA Allison Burroughs will testify about her conversations with R.F.'s counsel, in which she tried to convince him that R.F. should cooperate. She will also testify about the grand jury subpoenas she forwarded to K.F. and D.T.

Finally, The cooperating witness will testify briefly about his job at ABC Company, his knowledge of the overbilling, and the recorded March 2003 phone conversation with R.F., and then in more detail about receiving the threatening message, identifying the voice on the message as Vinal, and contacting the Department of Transportation agents.

B.   Exhibits

The key exhibits will be the cassette tape recording of the answering machine message and the phone records showing that the call was placed from Vinal's home phone. Defense counsel has told us that he will stipulate to the authenticity of the phone records. While there will be some additional exhibits, there will not be many. We will not, therefore, be using a computer to present the exhibits to the jury. We will, however, use the Court's document camera/Elmo so that the jury can look at the exhibits on their screens.

C.   Rule 6(e) issues

Because the testimony at trial may include some discussion of the ongoing ABC Company grand jury investigation (e.g. agents serving the grand jury subpoena on the company), this evidence could raise issues under the grand jury secrecy rule, Fed. R. Crim.

P. 6(e). The government has therefore filed a motion asking the Court to authorize all grand jury disclosures that are necessary to present the relevant evidence during this trial.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:   /s/ Adam J. Bookbinder
Adam J. Bookbinder
George B. Henderson, II
Date: December 7, 2004        Assistant U.S. Attorneys